UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:21-cr-00303-2 (ABJ) |
| v. : | |
| : | |
| DEBORAH LYNN LEE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE REGARDING CLOSED CIRCUIT TELEVISION**

Defendant Deborah Lynn Lee, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved *in limine* for an order precluding the government from using closed-circuit television footage as evidence in her trial. Lee fails to establish that this evidence is unreliable, or that the government will be unable to provide adequate foundation for its admission, and her request should be denied.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, Lee traveled from central Pennsylvania to Washington, D.C. to attend the former President's rally.[1] By about 2:20 p.m., Lee had walked to the Capitol, and was present on a landing on the east side of the building, just outside the door leading into the Capitol Rotunda. At about 2:24 p.m., rioters inside the Capitol forced those doors open, and Lee was among a crowd that pushed through doors and into the Capitol. Lee proceeded into and through the Rotunda, into Statuary Hall, and then into a small "connector" hallway leading from Statuary Hall to the main entrance to the House of Representatives chamber. She was present in that hallway as the crowd swelled and, eventually, overwhelmed the police line and surged forward toward the House chamber. She moved with the crowd to occupy the anteroom in front of the House chamber. That crowd dispersed about ten minutes later, after the police apparently deployed smoke canisters. Lee walked through other nearby hallways and then, eventually, into the Capitol Rotunda. She left at some point after 2:57 p.m., through the same eastern Rotunda doors. There, on the landing, Lee crowed that she and other members of the crowd "fucking did it," estimated that she was inside for about an hour, she responded "awesome" to another, nearby rioter's story of entry.

Based on her actions on January 6, 2021, Lee was charged with Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

The defendant now moves to prohibit the government from introducing evidence from the U.S. Capitol Police (USCP)'s system of closed-circuit television videos (CCTV) at her upcoming

---

[1] Lee traveled with her codefendant, Michael Rusyn, and was present with him throughout her time inside the building.

trial. (ECF No. 68.) She contends that the government will be unable present witnesses who can properly identify and authenticate such evidence. Her arguments are without merit, and the motion should be denied.

## ARGUMENT

Much of the riot at the United States Capitol building on January 6, 2021, was captured on video, including USCP CCTV footage. That includes footage of the defendant, who was easily recognizable in such footage by her bright, red-and-yellow jacket. The government's case at trial will rely on such CCTV footage to show the defendant's conduct and to contextualize it through other contemporaneous events.[2]

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.
> . . .
> (3) Comparison by an Expert Witness or the Trier of Fact. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> . . .
> (9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.

---

[2] Although Lee's motion specifically discussed *photographs* (ECF No. 38 at 2), the government's presentation of evidence in this trial, and other trials arising out of the events of January 6, 2021, are based on CCTV video. This response presumes that Lee intended her motion to apply to video, as well.

Fed. R. Evid. 901(b)(1), (3), (4), (9).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); see also *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also*, *e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349. *See also*, *e.g.*, *Belfast*, 611 F.3d at 819 ("Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g., United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (*quoting United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (*quoting United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)). *See, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

Lee claims that "[t]he only witnesses listed by the Government regarding the video are FBI agents who cannot possibly testify that the CCT[V] videos provide a fair representation of that which they purport to depict . . . ." It is unclear why she thinks this is so: a trial date has not yet been scheduled in this matter, and the government has not yet provided any witness list. At other trials related to the Capitol riot, CCTV videos have been authenticated by a USCP witness who is

familiar with the USCP's video system. *See, e.g.*, *United States v. Guy Reffitt*, 21-cr-32, Trial Tr. 748-752 (March 2, 2022) (Testimony of Insp. Monique Moore); *United States v. Couy Griffin*, 21-cr-92, Trial Tr. 144-146, 149-50 (D.D.C. March 21, 2022) (Testimony of Insp. John Erickson); *United States v. Thomas Robertson*, 21-cr-34, Trial Tr. 378-380 (D.D.C. April 5, 2022) (Testimony of Cpt. Ronald Ortega). And, even setting aside the testimony of USCP witnesses with working knowledge of the CCTV system, videos from the CCTV system could be authenticated by a person recorded by one of the cameras—such as a police officer dealing with the mob—who can attest that the footage is accurate. Fed. R. Evid. 901(b)(1). Indeed, the government is not aware of any evidence that would undermine the authenticity of these CCTV videos. Instead, they are what they purport to be: an accurate record of the events of January 6, 2021.[3]

      Lee also claims that the CCTV footage is inaccurate because it is time-lapsed. (ECF No. 68 at 2-3.) She is wrong: it is not time-lapsed. Time-lapsed recording is a technique by why film frames are captured at a lower frequency than that used to view the sequence. When played at normal speed, time appears to be moving faster. It is a useful technique for viewing things like the movement of stars across a night sky or the growth of plants, and there is nothing inherently inaccurate about it. But it is also not at issue here: the Capitol's CCTV cameras record footage in real time, and the government will present the footage in real time. Indeed, it is unclear why Lee thinks this case—or any of the Capitol riot prosecutions—involve presenting CCTV footage in a time-lapse format.

---

[3] The government's ability to authenticate the USCP's CCTV videos is clear enough that, in other cases, the defendant has stipulated to their authenticity, *e.g.*, *Reffit*, 21-cr-32, Trial Tr. 752 (March 2, 2022), or the government has moved in limine for a pretrial ruling that the videos are authentic, *e.g. United States v. Aaron Mostofsky*, 21-cr-138, ECF No. 84.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion *in limine* regarding CCTV footage should be denied.

                                              Respectfully submitted,

                                              MATTHEW M. GRAVES
                                              United States Attorney
                                              D.C. Bar No. 481052

By:    */s/ Michael J. Romano*
        MICHAEL J. ROMANO
        IL Bar No. 6293658
        Trial Attorney, Detailee
        555 4th Street, N.W.
        Washington, D.C. 20530
        Telephone No. (202) 307-6691
        michael.romano@usdoj.gov