UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

UNITED STATES                         )

      v.                                )          Case No: 1:21-cr-00303-2

DEBORAH LYNN LEE                      )

    Defendant.                        )


**MOTION TO DISMISS SUPERCEDING INDICTMENT FOR UNCONSTITUTIONAL RETALIATION, AND FOR FAILURE TO STATE A CLAIM**

COMES NOW the Defendant, Deborah Lynn Lee, by undersigned counsel, with this motion to dismiss the recent superceding indictment (ECF 93) for (1) unlawful and unconstitutional retaliation for refusing to accept the government's plea offer, and (2) failure to state a claim under the laws of the United States.

**Background.**

In August 2021, Deb Lee was arrested and charged with 'the four standard misdemeanors' for doing what hundreds of others did on Jan. 6: entering the U.S. Capitol and walking around the building in a demonstration over the 2020 presidential election. Deb Lee is one of hundreds of Jan. 6 protestors who simply walked between the velvet ropes of the Capitol Rotunda. Her codefendant, Mike Rusyn, accepted essentially the same plea offer which was extended to Deb Lee

and was sentenced to a $2,000 fine and 60 days home confinement. (And Rusyn has a prior arrest record for DUI and assault.)

Deb Lee rejected the offer and opted to defend herself at a forthcoming trial. A motion to designate her case for a bench trial before a Magistrate Judge was approved because her case was a misdemeanor case.

But now, some 19 months after her arrest, with Ms. Lee's bench trial scheduled for next month, the United States has issued a superseding indictment charging Deb Lee with obstruction of an official proceeding, a felony punishable by up to 20 years in federal prison.

Deb Lee is a decorated partially-disabled veteran, a mother of three, and a lifetime member of Veterans of Foreign Wars (VFW) and a 10 year member of America Legion. She served three years in Korea (1985/86/88), and served 11 years in the US Army Reserves.  During Desert Shield/Desert Storm, Ms. Lee held a position as assistant to instructors at the Army War College at Wesley, Delaware under Command & General Staff.  She raises funds for veteran causes and conducts funeral escorts for veterans.

Deb Lee is a model citizen with no criminal history.  She retired as a lieutenant with the Pennsylvania State Department of Corrections with numerous accommodations and certificates of recognition.  In fact, Ms. Lee was the first

woman ever promoted to sergeant at Waymart State Correctional Institution in Pennsylvania, and the first woman ever promoted to Lieutenant at the facility.  She was also the first woman ever on the CERT (Correctional Emergency Response Team) team.

Despite her injuries and disability, Deb Lee has run and helped organize dozens of 5K races for charity and fundraising.  And despite her career in corrections, Ms. Lee has been an advocate for the wrongly convicted. She is a member and officer of Bikers for Justice, a group that supports and raises funds for wrongly convicted inmates, and escorts defendants, family and witnesses to court proceedings to aid in exonerations.

**Legal standard.**

**The government cannot retaliate against defendants for exercising a constitutional right.**

It is a violation of the due process clause for the government to retaliate against defendants who choose to exercise their constitutional rights. In *United States v. Velsicol Chemical Corp*., 498 F. Supp. 1255 (D.D.C. 1980), Judge Parker ordered dismissal of an indictment used as retaliation by the DOJ against a defendant where the United States threatened the defendant with new charges if the defendant didn't plead guilty.  The defendant angered federal prosecutors by declining to plead guilty; instead pleading no contest and refusing to 'confess' to the allegations.

Vindictiveness principles are triggered when a prosecutor without notice increases the possible sanction severity for no valid reason after the defendant has exercised a procedural right. (See *United States v. Andrews* (6th Cir. 1980), 633 F.2d 449 (6th Cir. 1980) (en banc); *United States v. Ruesga-Martinez* (9th Cir. 1976), 534 F.2d 1367; *United States v. Gerard* (9th Cir. 1974), 491 F.2d 1300; *United States ex rel. Williams v. McMann* (2d Cir. 1970), 436 F.2d 103, *cert. denied* (1971), 402 U.S. 914 (1971).

In this case, significantly, the new "obstruction of an official proceeding" allegation is presumptively (and, in fact, plainly) retaliatory, given that the charge is based on no new information or evidence whatsoever.  Prosecutors have said simply that "the government's *understanding of the evidence evolved."*

When on April 11, the John Pierce Law firm asked federal prosecutors to explain their sudden unannounced escalation of charges (after some 18 months), prosecutors replied that "[t]here isn't any new case evidence, only what you already have (though I am preparing a comprehensive folder to share everything with you again shortly). However, as we prepared for trial, the government's *understanding of the evidence evolved."*

This is perhaps the frankest possible admission that the government has increased its charges against Deb Lee as punishment for making the government

"prepare[ ] for trial."  It is well settled that such motivation violates the due process clause, the eighth amendment, and other fundamental rights.

The government's 'new evolving' "understanding of the evidence" is vindictiveness and retaliation masked as trial preparation.  Deb Lee's *counsel was also preparing for trial*; and Ms. Lee is now prejudiced beyond description. (Compare *North Carolina v. Pearce* (1969), 395 U.S. 711, and *Blackledge v. Perry* (1974), 417 U.S. 21, with *Colten v. Kentucky* (1972), 407 U.S. 104, and *Chaffin v. Stynchcombe*, 412 U.S. 17 (1973). There is also the <u>appearance of vindictiveness</u> when a mysterious new felony "obstruction" charge is piled onto defendant Lee's charges after Ms. Lee turned down the government's plea offer.

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the Supreme Court considered whether a person convicted upon retrial after his initial conviction was set aside on appeal could properly be given a sentence greater than the sentence received upon his initial conviction. The court concluded that an increased sentence upon reconviction would run afoul of constitutional due process requirements unless the increase was justified by an on-the-record statement by the sentencing court providing "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726.

The holding of the court in *Pearce* was not restricted to actual vindictiveness but extended to the potential chilling effect on the exercise of appellate rights created by the appearance of vindictiveness stemming from enhancement of a sentence upon retrial:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process requires also that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing court.

395 U.S. at 725 (footnote omitted).

The rule of *Pearce* was extended to vindictive conduct on the part of prosecutors five years later in *Blackledge v. Perry*, 417 U.S. 21 (1974). There, petitioners were convicted of misdemeanors after state district court trials in North Carolina. They then asserted their right to trial *de novo* in superior court. Felony charges were thereupon substituted by the prosecution, and petitioners were convicted of those charges.

After discussing *Pearce* and two subsequent cases dealing with the issue of judicial vindictiveness-- *Colten v. Kentucky*, 407 U.S. 104 (1972), and *Chaffin v. Stynchcombe*, 412 U.S. 17 (1973)--the court in *Blackledge* found:

> The lesson that emerges from *Pearce*, *Colten*, and *Chaffin* is that
> the Due Process Clause is not offended by all possibilities of
> increased punishment upon retrial after appeal, but only by those
> that pose *a realistic likelihood* of 'vindictiveness.'

417 U.S. at 27 (emphasis added).

Here there is not only the likelihood of vindictiveness. There is the plain

admission by prosecutors that their startling new obstruction charge is based on no

newly discovered information whatsoever. Prosecutors—rather than face

defendant Lee at a misdemeanor bench trial in four weeks—have vindictively

retaliated by increasing Lee's sentencing exposure by a factor of twenty! This is

designed to chill the exercise of rights by Jan. 6 litigants.

Because the mere appearance of vindictiveness may deter a defendant from

challenging the lawfulness of his conviction, due process concepts prohibit the

state from "upping the ante." The rule applies whenever the prosecution has

knowledge of the facts essential to the more serious charge at the time of the

original indictment. "Absent an adequate justification for the superseding or

additional charges, vindictiveness will be presumed." *Dyer v. State*, 666 P.2d 438,

443 n.2 (Ak. 1983) (citations omitted). It is insufficient for the prosecution merely

to establish the lack of actual malice; instead, a prima facie showing of

vindictiveness must be rebutted by "negating the possibility of vindictiveness."

*United States v. Velsicol Chemical Corp.*, 498 F. Supp. at 1265. Thus, the Court of

Appeals for the Sixth Circuit, sitting en banc, has recently held:

> We emphasize that once a court has found the existence of a
> realistic likelihood of vindictiveness the burden of disproving it is
> on the government . . . . We do not think that judges should pass on
> subjective good faith assertions by prosecutors. Both *Pearce* and
> *Blackledge* went out of their way to avoid such difficult and
> unpleasant decision-making. At the same time, in *Blackledge* the
> court noted in a footnote that 'this would clearly be a different case
> if the state had shown that it was impossible to proceed on the more
> serious charge at the outset.' From this, we think that only
> objective, on-the-record explanations can suffice to rebut a finding
> of realistic likelihood of vindictiveness.

*United States v. Andrews*, 633 F.2d at 456 (footnote and citation omitted).

The additional charges alleged against Deb. Lee add <u>additional potential</u>

<u>decades</u> in prison.  As the district court in *United States v. DeMarco* so aptly

stated, 'the day our constitution permits prosecutors to deter defendants from

exercising any and all of their guaranteed rights by threatening them with new

charges fortunately has not yet arrived.' 401 F. Supp. 505, 510 (C.D. Cal. 1975),

aff'd 550 F.2d 1224 (9th Cir. 1976), cert. denied, 434 U.S. 827 (1977).

**The government's Statement of Offense regarding Deborah Lee does not
support charges for obstructing an official proceeding.**

Moreover, the Statement of Offense on file in this case does not evidence

any support to charge Ms. Lee with obstruction of an official proceeding.

On the morning of January 6, 2021, the defendant traveled by bus from Pennsylvania to Washington, D.C. with a group of people, including her codefendant Michael Rusyn. The defendant was involved in chartering a group of three buses to bring people from Pennsylvania to Washington, D.C. to attend a rally held by the former President. By approximately 2:10 p.m., the defendant stood on the east side of the Capitol building, near the eastern, double doors at the top of the Capitol steps, leading to the rotunda. She was in a crowd of people, close enough to the front of the crowd that she could see the doors.

Nothing in this description remotely suggests Ms. Lee committed any crime;

let alone that Ms. Lee corruptly obstructed any official proceedings.

Beginning at approximately 2:20 p.m., continuing through at least approximately 2:24 p.m., *members of the crowd* [emphasis added] began smashing the windowpanes within these doors. At approximately 2:25 p.m., *another rioter* [emphasis added] opened one of the double doors from the inside. Thereafter, *that person* [emphasis added] and several other rioters opened this door widely enough to allow members of the crowd to breach the door and enter the Capitol building.

Nothing in this paragraph implicates Ms. Lee in any crime.

At approximately 2:27 p.m., the defendant *entered the Capitol building* [emphasis added] through the breached door. She turned back across the threshold and extended her hand to Michael Rusyn, who took her hand and pulled himself through the crowd, across the threshold and into the Capitol building. The two were among the first thirty to forty people to enter the Capitol after the breach of this door. Together, they proceeded forward, immediately, into the Capitol rotunda.

Shortly thereafter, the defendant and Rusyn *joined a large crowd of people*, [emphasis added] gathered in a hallway outside of the chamber of the House of Representatives ("the House chamber"). Initially, this group was stopped by approximately ten officers employed by the U.S. Capitol Police Department. *Members of the group* [but not the defendant] demanded that officers stand aside and

allow them access to the House chamber. At various times, *members of the group* [but not the defendant] shouted "Tell Pelosi we're coming for that b****," called the police officers traitors, and chanted "Stop the Steal" and "We want Trump." Within the crowd, the defendant and Rusyn *stood approximately 10 feet from the front of the group, in a position to see and hear* [emphasis added] what was happening at the front. The defendant and Rusyn *participated in chanting* "We want Trump," and *held up their cellular phones in an apparent attempt to record* this group's encounter with police.

"Joining a large crowd" of others who are "demanding" things in a political demonstration, without more, cannot be a crime (other than, perhaps a time, place, or manner offense); especially when <u>others</u> are doing the "demanding." Standing "approximately 10 feet from the front of a group, "in a position to see and hear" is not a crime. Chanting "we want Trump" is no crime (other than, perhaps, misdemeanor picketing and parading if the chanting rose to levels of disruptiveness).[1]  Holding up a cell phone "in an apparent attempt to record [a] group's encounter with police" is not corruptly obstructing an official proceeding (especially a proceeding a chamber or more away).

Over the course of about seven minutes, *this crowd swelled* [emphasis added] until it tightly packed the hallway. Approximately

---

[1] Judge Friedman's opinion in *Bynum v. U.S. Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000) concluded that the interior of the Capitol is generally a nonpublic forum.  However, *Bynum* struck down a previous ban on picketing and parading in the Capitol as too broad. See id. *Bynum* held that groups of visitors have 1st amendment rights to hold nondisruptive organized speeches and prayer sessions in Capitol hallways). "While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as "speechmaking . . . or other expressive conduct. . . ." Bynum, at 58-59.

> seven minutes after the crowd formed, the *members at the front of the crowd surged forward* [but not the defendant] against the police line, pushing the officers back. The defendant and Rusyn *moved forward, walking with the crowd, as it broke through the police line* [emphasis added].

Nothing in this description implicates defendant Lee in any felony obstruction charge.  Being amidst a swelling crowd does not constitute corrupt obstruction.  Being amidst a crowd which "surges forward" against a police line is hardly a felonious crime of obstruction.  "Walking with" a crowd as the crowd "broke through" a police line (even in the possible worst light of any such breakthrough—which defense counsel predicts the evidence will not show) does not implicate defendant in corruptly obstructing an official proceeding.

> *This crowd* moved forward into a second hallway, *moving toward* the main door to the House chamber. The defendant and Rusyn *moved deeper within this crowd* toward that door. Ultimately, this group did not breach the door, and eventually, it dispersed. After the group dispersed, the defendant and Lee *remained in the Capitol building* until sometime after 3:00 p.m.

Being "in a crowd" that "moved forward" or "moved toward a main door" or even "moving deeper within this crowd" <u>might</u> constitute *parading* if taken in the worst light.  But such acts cannot constitute corruptly obstructing an official proceeding.  And even if Deb Lee "remained in the Capitol building" until sometime after 3:00 p.m., such conduct cannot be more than a possible misdemeanor.

The indictment, along with the Statement of Facts on file in this case, fail to state a claim upon which any relief can be granted under 18 U.S.C. Section 1512. Deb Lee is being punished by the government for declining to accept the government's plea offer.  Accordingly, this indictment must be dismissed with prejudice.

Dated: April 25th 2023                                          Respectfully Submitted,

*/s/ John M. Pierce*

John M. Pierce

John Pierce Law, P.C.

21550 Oxnard Street

3rd Floor,

PMB 172 Woodland Hills, CA 91367

jpierce@johnpiercelaw.com

(213) 279-7648

Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.