# UNITED STATES DISTRICT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No. 21-cr-00303-ABJ** |
| ) | |
| **DEBORAH LEE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

### DEFENDANT DEBORAH LEE'S SEVERAL MOTIONS TO DISMISS
### FOR FAILURE TO STATE A CLAIM FOR
### (1)  PARADING, DEMONSTRATING OR PICKETING UNDER FIRST AMENDMENT
### (2)  OBSTRUCTION OF AN OFFICIAL PROCEEDING
### (3)  GROUP OR CROWD CRIMINAL LIABILITY
### (4)  LACK OF NOTICE OF RESTRICTED AREA

John M. Pierce
John Pierce Law, P.C.
2550 Oxnard Street
3rd Floor,  PMB# 172
Woodlands, Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7648

*Attorney for Defendant*

NOW COMES Defendant DEBORAH LEE, by and through her counsel of record, John M. Pierce, Esq., and in addition to and in parallel to her other motions, respectfully requests this Honorable Court, to dismiss

## I.     INTRODUCTION:  OVERVIEW

A.  **Count** I for failure to state a claim that Defendant Lee played any role in causing the interruption or obstruction ("recess" being the correct Congressional term counsel is advised by those knowledgeable of Congressional procedures) of the Joint Session of Congress that convened on January 6, 2021, to witness and/or challenge the counting of Electoral College votes for President and Vice President by the presiding officer of the U.S. Senate (as which Vice President Mike Pence claimed his right to serve).[1]

B.  **Count I** for failure to state a claim that Defendant Lee played any role in delaying for even a fraction of a second the resumption of the Joint Session of Congress because she was far from the last person to leave the Capitol building and Capitol grounds, and because she left voluntarily consuming no effort or resources to remove her, such that the resumption of the Joint Session of Congress required no additional time or effort or resources from Defendant Lee briefly looking inside the People's House and then leaving.

C.  **Count I** for failure to state a claim that Defendant Lee acted "corruptly" and thereby obstructed "corruptly" the Joint Session of Congress

---

[1]     It is worth remembering that in Congressional procedures, a date and time at which a proceeding is scheduled to convene in no way limits Congress from recessing and reconvening on a different day or days.  Congress is famous for "one legislative day" lasting many days.

D. **All Counts** except perhaps Count 2 for failing to state a claim of any individual guilt by Defendant Lee.  The Government's case consists exclusively of what other people did, not Lee.  The Government is trying to find crowds guilty collectively, instead of proving any individual guilt by Defendant Lee.  Amazingly, one judge just recently struggled to evade this error by claiming that a Defendant was being punished only for her own actions, but her "own" conduct consisted of being near other people committing a crime!  A Defendant cannot be constitutionally punished for being in the vicinity of others who committed a crime or being part of a crowd, without more.   A Defendant cannot be guilty of what other people said or cried or yelled or chanted, which the Defendant might well have disagreed with or felt was stupid.

E. **Count V** for "parading, demonstrating, or picketing" in a Capitol building[2], which charge is a violation of Defendant Lee's constitutionally protected rights under the First Amendment to the U.S. Constitution.

Specifically, *(i)* Lee is already separately charged with three counts that sound in disruption or being disorderly.  Therefore, Count V cannot merely be another way accusing Lee of being disorderly or disruptive.  ***This leaves Lee charged under Count V with <u>only non-disruptive</u>*** parading, ***<u>non-disruptive</u>*** demonstrating, or ***<u>non-disruptive</u>*** picketing, as the only things not covered already by other Counts.

However, *(ii)* what is left as non-disruptive "parading, demonstrating, or picketing" would be pure expressive conduct guaranteed under the First

---

[2]     There being many major buildings in the Capitol complex aside from the Capitol.

Amendment and/or the right to petition the government for redress of grievances guaranteed under the First Amendment.

Therefore, the Government charging, the Court trying, or the Court punishing non-disruptive disruptive "parading, demonstrating, or picketing" would violate Lee's constitutional rights.

Again, this would be different if the Government had any factual allegation that Lee disrupting Congress or any activity of Congress, and would then sound in time, place, or manner. Lee might be subject to being asked to leave, that is merely trespass. But Lee could not be punished for non-disruptive speech or expression.

F. **Count 2** for failing to state a claim that Defendant Lee was placed on any notice that a restricted area had been declared (although only the Secret Service can declare a restricted building or grounds) by the U.S. Capitol Police Board, however all traces of such restriction had been trampled, torn down deliberately by others or removed deliberately by others.

## II.   INTRODUCTION: THE CHARGES

1.   The Defendant is charged by indictment with:

   A. Count 1 - 18 U.S.C. §1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting Obstruction of an Official Proceeding)

   B. Count 2 – 18 U.S.C. § 1752(a)(1) (Entering or Remaining in any Restricted Building or Grounds).

   C. Count 3 – 18 U.S.C. §1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building).

   D. Count 4 - 40 U.S.C. §5104(e)(2)(D)  (Disorderly Conduct in a Capitol Building)

   E. Count 5 - 18 U.S.C. §5104(e)(2)(G) (Parading,
     Demonstrating, or Picketing in a Capitol Building)

## III. GOVERNING LAW

  In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the Circuit Court examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding bstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw. As stated by the *Hunter* Court:

> [i]t is elementary that an information or indictment must set out the ***facts*** constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the ***exact*** crime which he is alleged to have committed.

*Id.* at 409, 410 *(emphasis added)* (internal quotation marks and citation omitted).

  The *Hunter* Court also observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague,

general, and uncertain to meet the requirements of the established rules of criminal

pleading," which in turn rendered it "insufficient in law." *Id.* at 410.

Before trial, a defendant in a criminal case may move to dismiss the charging

document for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). *See United

States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016)*(Citations omitted)*. The

operative question is whether the allegations in the indictment, if proven, permit a

jury to conclude that the defendant committed the criminal offense as charged.

*Ankinyoyenu* at 9-10. *See United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107

(D.D.C.2012); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C.2011).

Moreover, in analyzing this, "a district court is limited to reviewing the face of the

charging document and, more specifically, the language used to charge the crimes."

*United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)(emphasis original).

A valid information must set out "the elements of the offense intended to be

charged and sufficiently apprise the defendant of what he must be prepared to meet."

*United States v. Pickett*, 353 F.3d 62,67 (D.C. Cir. 2004). The government must state

the essential elements of the crime and allegations of "overt acts [constituting the

offense] with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720

(D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional

provisions. First, it gives Sixth Amendment notice of the nature and circumstances of

the alleged crime so the accused may meet the charge and defend himself. *United

States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *Hamling v. United States*, 418

U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts

that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United

States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764 F.Supp.2d 166, 170

(D.D.C.2011) (quotations and citations omitted). That is, the allegations must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular Defendant to identify if the Defendant were later charged with the same offense that double jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true. *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. *See Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017). The Supreme Court explained:

> "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

The Supreme Court also noted:

> "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, `includes *generic* terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — it must descend to particulars.'" *Id.* (emphasis added).

The Supreme Court made it clear that allegations that are generic and not specific to a specific defendant are not sufficient.

The Fifth and Sixth Amendments and Rule 7(c)(1) generally require that the elements be combined with allegations of fact that establish the offense when assumed true. *Hamling*, 418 U.S. at 117-118; Fed. R. Crim. Proc. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of

the essential facts constituting the offense charged...") (emphasis added). The D.C. Circuit has also ruled on the necessity of factual allegations. *See United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing where the indictment failed to make necessary factual allegations).

## IV.    ARGUMENT:

1. The superseding indictment, and each count of it, fails to allege facts sufficient to constitute an offense against the United States or the laws thereof.

2. Even consulting the Statement of Offense prepared by the Governmen, and each count of it, are so vague, ambiguous, and indefinite that they do not inform the defendant of the nature of the case against her prevent her from adequately preparing a defense, and do not prevent the possibility of a subsequent prosecution for the same offense.

3. The superseding indictment is vague and uncertain, and fails to be or contain a plain, concise, and definite written statement of the essential facts constituting the offense sought to be charged.

## V.    ARGUMENT:   COURT CANNOT CONVICT CROWDS

Today's U.S. Department of Justice curiously believes fervently that it can prosecute crowds or prove collective guilt.  And the District Court judges are falling for this error.  Just as corporations act through their officers (see Section 9-28.010, Justice Manual, U.S. Department of Justice),[3] crowds do not do things.  Individuals do

---

[3]     https://www.justice.gov/jm/jm-9-28000-principles-federal-prosecution-business-organizations#9-28.010

things.  Crowds do not.  Individuals if authorized might act on behalf of a corporation

or entity.  But only human beings do things.  Yet we are witnessing a titanic shift in

criminal law in collectivist prosecution.

> This is where things fall apart. Although both Governor
> DeSantis and Sheriff Williams argue that the phrase "willfully
> participate" is commonly understood, neither party offers an
> actual definition. Is it enough to stand passively near
> violence? What if you continue protesting when violence
> erupts? What if that protest merely involves standing with a
> sign while others fight around you? Does it depend on
> whether your sign expresses a message that is pro- or anti-law
> enforcement? What about filming the violence? What if you
> are in the process of leaving the disturbance and give a rioter
> a bottle of water to wash tear gas from their eyes?

*See, Order Issuing Injunction, The Dream Defenders, et al., v. Ron DeSantis,* Case
No. 4:21-cv-00191-MW-MAF, ECF No. 137 (N.D. Fla. Sept. 9, 2021), (Mark E.
Walker, Chief United States District Judge),  Page 53 *(injunction against anti-riot law
in part because the legislation appeared to criminalize the defendant's protest
activities even if he did not participate in the violent acts of others) 1:21-cv-191
consolidated case).*  And continuing:

> If this Court does not enjoin the statute's enforcement, ***the
> lawless actions of a few rogue individuals could effectively
> criminalize the protected speech of hundreds, if not
> thousands, of law-abiding Floridians***. This violates the First
> Amendment. See, e.g., *Bible Believers v. Wayne Cnty.*, Mich.,
> 805 F.3d 228, 252 (6th Cir. 2015). Florida's interest in
> preventing public violence is beyond question, but when that
> interest collides with rights guaranteed by the First
> Amendment, the "government may regulate in the area only
> with narrow specificity." *Button*, 371 U.S. at 433. Otherwise,
> those rights, which "are delicate and vulnerable, as well as
> supremely precious in our society," may be suffocated. Id.
> Section 870.01(2), through its ambiguity, chills speech and
> eviscerates that essential breathing space. The law is
> overbroad.[27]

> Accordingly, I conclude that Plaintiffs have established a
> substantial likelihood of success on the merits as to their
> overbreadth claim.

*Id.,* at Page 77 *(emphases added).*

No U.S. citizen can be guilty of the "context" of what other people did.  The

careless transfer of the actions of "crowds" or "others" to specific defendants is an

attack upon Due Process and the burden of proof of proving the elements of a crime beyond a reasonable doubt.

If the Government could allege a conspiracy, it would have done so.  But it did not.  And now it never can.  So Rivera is not responsible for other people, particularly those he never met.

"It is well-established that the determination of probable cause must be an individualized matter." *Carr v. District of Columbia*, 565 F. Supp. 2d 94, 99 (D.C. Cir. 2009). See also *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another ...." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 (1979). "To demonstrate that plaintiffs' arrests were valid, therefore, the District must show that it had probable cause to arrest each individual . . ." *Carr*, 565 F. Supp. 2d at 99.

"**The fact that rioting is a group offense does not eliminate the constitutional requirement of particularized suspicion of guilt.**" *Id. (emphasis added).*  This is true even if the "mob" has a generalized characterization of criminal behavior. *Carr*, supra, at 99.   Mr. Rivera cannot be prosecuted merely for associating with them. See *Washington Mobilization Committee v. Cullinane*, 566 F.2d 107 (D.C. Cir. 1977); *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977); *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006); *Carr*, at 101.


**VI.    ARGUMENT:  FIRST AMENDMENT VIOLATION**

The Court in *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50

(D.D.C. 2000) found regulations purporting to implement 40 U.S.C. §5104(e)(2)(G)

to violate the First Amendment and Due Process. With respect to the First

Amendment the *Bynum* Court states:

> The Court, however, cannot conclude that the regulation is
> reasonable in light of the purposes it could legitimately serve.
> While the regulation is justified by the need expressed in the
> statute to prevent disruptive conduct in the Capitol, it sweeps
> too broadly by inviting the Capitol Police to restrict behavior
> that is in no way disruptive, such as "speechmaking… or
> other expressive conduct…" Traffic Regulations for the
> Capitol Grounds §158. Because the regulations proscriptions
> are not limited to the legitimate purposes set forth in the
> statue, it is an unreasonable and therefore an unconstitutional
> restriction on speech. …

*Id.* at 57 *(Citations omitted).*

In *Bynum* Judge Friedman also found that a "picketing and parading" ban

violated due process because it was vague: "While there certainly are types of

expressive acts that rise to the level of a demonstration, any regulation that allows a

police officer the unfettered discretion to restrict behavior merely because it 'conveys

a message' or because it has a 'propensity to attract a crowd of onlookers' cannot

survive a due process challenge." *Id.*

With respect to Due Process and unconstitutional vagueness, the *Bynum* Court

states:

> In fact, the definition of "demonstration" in the regulation
> encompassing all expressive conduct, whether disruptive or
> not appears to expand the restrictive powers given by the
> statute to the Capitol Police rather than limit or guide them.
> This definitional "guidepost" thus has the potential to squelch
> nearly any type of expressive conduct, whether or not it is
> actually a demonstration, and may sweep within its scope
> expression that is protected by the First Amendment. The
> regulation therefore is both unconstitutionally overbroad and
> unconstitutionally vague.

*Id.* at 58.

The main holding in Bynum was that broad regulations purporting to

11

implement 40 U.S.C. §5104(e)(2)(G) violated the First Amendment and Due Process.

As part of its analysis, the *Bynum* Court stated:

> Indeed, the regulation goes beyond what Congress intended and permits the Capitol Police to block activity not proscribed or intended to be proscribed by the statute Congress enacted. The statute prohibits loud, threatening or abusive language; any disorderly or disruptive conduct engaged in with the intent to impede, disrupt or disturb the orderly conduct of any session of Congress or a congressional hearing or committee meeting; any behavior that obstructs or impedes passage through or within the Capitol or any of its buildings or grounds; physical violence; and parades and picketing. 40 U.S.C. § 193f(b) (4)-(7).[5] When viewed in the context of these other various forms of statutorily prohibited behavior, Congress' statutory prohibition against "demonstrat[ing]" appears aimed at controlling only such conduct that would disrupt the orderly business of Congress not activities such as quiet praying, accompanied by bowed heads and folded hands. The police could properly use the statutory standards of Section 193f(b) itself to control, for example, groups of people praying in a way that impeded or obstructed passageways, hearings or meetings, involved loud, threatening or abusive language or physical violence, or was otherwise disorderly or disruptive. Plaintiff's activity was none of these.

*Bynum* at 57-58.

> *See also Lederman v. U.S.*, 291 F.3d 36 (D.C. Cir. 2002) (reviewing facial

First Amendment challenge to a regulatory prohibition on demonstration activities

outside Capitol building). As stated in *Lederman*,

> We hold only that, as currently written, the demonstration ban imposes "a serious loss to speech . . . for a disproportionately small governmental gain," *Citing White House Vigil for the ERA Comm. v. Clark,* 746 F.2d 1518, 1544 (D.C. Cir. 1984)(Wald, J. concurring in the judgement in part and dissenting in part on other grounds).

*Lederman* at 46.

> *Lederman* undercuts a key pillar of the logic:

> If "time, place, or manner restrictions can[not] bootstrap *themselves* into validity by their mere existence, even if prolonged," *Henderson v. Lujan,* 964 F.2d 1179, 1183 (D.C.

Cir. 1992) (emphasis added), then unconstitutional restrictions
certainly cannot, by their mere existence, bootstrap
*subsequent* restrictions into validity.

*Lederman* at 43.

In *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575

(D.D.C. 1972) *(emphases added)*, the court states:

> **<u>The Capitol Grounds</u>** (excluding such places as the Senate
> and House floors, committee rooms, etc.) **<u>have traditionally
> been open to the public</u>**; indeed, thousands of people visit
> them each year. Thus, we cannot agree with the defendants
> that the Capitol Grounds have ever been characterized by the
> serenity and quiet of a hospital or library.

While the *Jeannette Rankin Brigade* court was reviewing an issue concerning

the Capitol Grounds, the stated exclusions of the Senate and House floors and

committee rooms is more consistent with the public availability issues. In any event,

the *Jeannette Ranking Brigade* court did not specifically opine on areas of Capitol

Buildings that were not the Senate and House floors or committee rooms.

In *Jeannette Rankin Brigade,* 342 F. Supp.at 583-84, the Court held a blanket

statutory prohibition on parades, assemblages or processions on Capitol Grounds **<u>is</u>**

**<u>unconstitutional</u>**. See also *Gregory v. Chicago*, 394 U.S. 111, 89 S. Ct. 946 (1969)

(where the Supreme Court reviewed a protest march aimed at the Chicago city

government and held that as long as marches are "peaceful and orderly" they are

protected by the First Amendment.); *Edwards v. South Carolina*, 372 U.S. 229, 83 S.

Ct. 680 (1963); *Carey v. Brown*, 447 U.S. 455, 100 S. Ct. 2286 (1980); *Police

Department of Chicago v. Mosley*, 408 U.S. 92, 92 S. Ct. 2286 (1972); and *Thornhill

v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940).

Federal Courts have altered their traditional rules of standing to permit — in

the First Amendment area — "attacks on overly broad statutes with no requirement

13

that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski* v. *Pfister*, 380 U.S. 479, 486 (1965).Id. at 611.

The Broadrick Court, *infra,* continued that "Litigants, therefore, are permitted to challenge a statute not because their own right of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. Id.

Both 40 U.S.C. §5104(e)(2)(G) and (f) are expressly defined by First Amendment activity. Whereas other provisions such as 40 U.S.C. §5104(b), (d), and (e) limit activity without reference to First Amendment activity terms. For example, 40 U.S.C. §5104(e)(2)(D)-(F) have restrictions stating an individual or group of individuals may not:

> (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;
>
> (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings;
>
> (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings

Just looking at the text, 40 U.S.C. §5104(e)(2)(G) can cover a universe of conduct that can run afoul of one or more of the provisions of 40 U.S.C. §5104(e)(2)(D)-(F) but may or may not also a universe of conduct that does not run afoul of one or more of the provisions of 40 U.S.C. §5104(e)(2)(D)-(F).

*As stated in Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502 (1987):

> Instead, "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *Kolender* v. *Lawson*, 461 U.S. 352, 359, n. 8 (1983). Criminal statutes must be scrutinized with particular care, *e.g., Winters* v. *New York*, 333 U.S. 507, 515 (1948); those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application. *E. g., Kolender, supra*, at 359, n. 8.

A law is unconstitutionally vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). As stated in *Johnson:*

> [O]ur *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. *L. Cohen Grocery Co.,* 255 U.S. at 89, 41 S.Ct 298. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"— even though spitting in someone's face would surely be annoying. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971). These decisions refute any suggestion that the existence of *some* obviously risky crimes establishes the residual clause's constitutionality.

As stated in *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S. Ct. 328 (1963):

> If the line drawn by the decree between the permitted and prohibited activities of the NAACP, its members and lawyers is an ambiguous one, we will not presume that the statute curtails constitutionally protected activity as little as possible. For standards of permissible statutory vagueness are strict in the area of free expression. See *Smith* v. *California*, 361 U.S. 147, 151; *Winters* v. *New York*, 333 U.S. 507, 509-510, 517-518; *Herndon* v. *Lowry*, 301 U.S. 242; *Stromberg* v.

*California*, 283 U.S. 359; *United States* v. *C.I.O.*, 335 U.S.
106, 142 (Rutledge, J., concurring).

*N.A.A.C.P. at 432.*

Dated: June 13, 2022                             Respectfully Submitted,

                                                 /s/ John M. Pierce
                                                 John M. Pierce
                                                 John Pierce Law, P.C.
                                                 2550 Oxnard Street
                                                 3rd Floor,  PMB# 172
                                                 Woodlands, Hills, CA 91367
                                                  jpierce@johnpiercelaw.com
                                                 (213) 279-7648

                                                 *Attorney for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I, John M. Pierce, hereby certify that on this day, June 9, 2023, I caused a copy of the foregoing

document to be served on all counsel through the Court's CM/ECF case filing system.


<u>/s/ John M. Pierce</u>
John M. Pierce