UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-303 (ABJ) |
| v. : | |
| : | |
| DEBORAH LYNN LEE, : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR VINDICTIVE PROSECUTION AND FAILURE TO STATE A CLAIM

Deborah Lee was charged initially with misdemeanors and turned down an early offer to resolve her case. As the government began marshalling its evidence and preparing for trial in earnest, it determined that it could prove beyond a reasonable doubt that Lee had obstructed an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). The government superseded with the new charge, as it has in many cases in a similar posture.[1] This sequence of events is both legal and unremarkable, as the Supreme Court recognized in *United States v. Goodwin,* 457 U.S. 368, 382 n.15 (1982), a decision that squarely forecloses Lee's vindictive-prosecution claim.

Presenting neither objective evidence showing actual vindictiveness nor evidence suggesting a realistic likelihood thereof that would lead to a presumption of vindictiveness, Lee fails to make out even the prima facie case required to shift the burden to the government to produce evidence of a lawful motivation for the charges. *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

---

[1] *See, e.g.,* Superseding Indictment, *United States v. Speed,* 22-cr-244 (TNM), ECF No. 38 (superseding indictment adding felony charge just over one month before trial); Third Superseding Indictment, *United States v. Miller,* 21-cr-119 (CJN), ECF No. 111 (same); *United States v. Barnett,* 21-cr-38 (CRC), ECF No. 96 (same, less than three weeks before trial); Second Superseding *United States v. Irwin,* 21-cr-589 (RDM), ECF No. 48 (same, 15 days before trial).

Even were the Court to disagree, the government can point to multiple facts in the record that would readily satisfy that "admittedly minimal" burden, including the strong evidence of Lee's corrupt intent on January 6, 2021. *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (citation omitted). This is not a vindictive prosecution. It is a well-founded one. The Court should deny Lee's motion to dismiss for unconstitutional retaliation.

Moreover, the superseding indictment (ECF 93) clearly alleges Lee's specific conduct that constitutes a violation of 18 U.S.C. § 1512(c)(2). As such, the Court should also deny Lee's motion to dismiss for failure to state a claim.

## FACTUAL BACKGROUND

### I. Lee's Criminal Conduct

Immediately following the November 2020 Presidential Election, Lee decried the results on social media, alleging fraud. Repeatedly, Lee pointed to January 6, 2021 as a significant opportunity for those results to be overturned, including through violence. On more than one occasion, Lee took to social media to express her desire that certain members of the U.S. Government be harmed, including through "execution by firing squad." In December 2020, Lee arranged for a bus to take a group from Pennsylvania to Washington, D.C. on January 6th to "#stopthesteal." Lee knew that Congress would meet to certify Biden's victory in the 2020 Presidential Election, and Lee wanted to ensure that this was not successful.

At about 2 p.m. on January 6, 2021, Lee stood at the base of the stairs on the U.S. Capitol's East Plaza, where a group of United States Capitol Police (USCP) Officers had formed a line. They were dressed in full riot gear, shields up, to prevent the rioters from ascending the steps and breaching the U.S. Capitol's East Rotunda door. Several minutes later, the rioters pushed pashed the line of officers and up the steps, where they began to try and break in through the East Rotunda

door. Lee followed the rioters past the police and up the steps, where she filmed fighting between the rioters and officers trying to prevent the breach. Shortly thereafter, the swarm of rioters broke open the door, and Lee was one of the first 30 or 40 people to force her way into the U.S. Capitol as the USCP struggled to try and repel the breach.

Once inside the Capitol building, Lee immediately headed West into the Rotunda, turned South, and walked straight through the Statuary Hall, chanting. There she encountered a line of USCP Officers guarding the narrow hall separating Lee and other rioters from the Chamber of the House of Congress, where Members of Congress were still being evacuated. The crowd of rioters swelled, and at about 2:36 p.m., forced their way past the USCP Officers and right up to the House Chamber Door. Lee filmed on her cell phone as rioters used a fire extinguisher to break the glass panes on the door. She pushed her way forward until she stood only a few feet back from the House Chamber Door, where she began live streaming to Facebook: "I'm live I'm at the Capitol doors we're all the way inside the building trying to get in, we got the glass broken, these are all your patriots, this is our house!" Lee knew exactly where she was – she had nearly reached the House floor where members of Congress were meeting to certify the election, and she was trying to stop them.

Inside the House Chamber, Officers barricaded the door and drew their guns to hold the rioters back, while Members of Congress continued their evacuation. Before the rioters could breach the door, USCP Officers deployed tear gas in the area and disbursed the crowd. Lee remained in the Capitol, where she chanted and filmed further altercations between rioters and law enforcement officers in the Rotunda. Lee finally exited the U.S. Capitol at about 3:24pm, nearly an hour after first entering. She remained on Capitol Grounds and, standing just outside of the East Rotunda Door she had earlier forced her way through, she summed up for another rioter what she

had just done: "We fucking did it. Right inside. We fucking did it. Its our house. We fucking did it. Snorted some awesome fucking pepper spray… We used a fire extinguisher to break the glass. To get in. But then they drew guns… We went right in through this door and went straight in. probably in there for an hour. We broke right through the front and went right in."

## II.    Initial Charges and Plea Offer

On August 12, 2021, Lee was arrested on a complaint charging her with four misdemeanors in connection with her role in the breach of the U.S. Capitol.[2] On August 27, 2021, Lee was charged by information with the same four misdemeanors alleged in the complaint (ECF 28). Case-specific discovery, including materials from Lee's Facebook and Capitol surveillance video of Lee, was produced to Lee on November 8, 2021.

The government issued a plea offer on December 1, 2021. The offer allowed Lee to plead guilty to the charge of parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), a six-month misdemeanor. The government gave Lee over a month to consider the offer, setting a deadline of January 3, 2022, three days before the next status hearing.

On December 24, 2021, defense counsel requested a 30-day extension of the plea offer's expiration, citing Lee's "need to really think about this and spend more time with us discussing." On December 28, 2021, the government granted this request. The January 6, 2022, status conference was later continued until February 10, 2022, such that Lee would have more time to consider the plea offer.

On January 31, 2022, having heard nothing from defense counsel, the government asked if the defendant would accept the plea offer. Defense counsel replied that Lee would not accept. On

---

[2] Lee was charged as a codefendant in a case already opened against Joseph Michael Rusyn, with whom Lee traveled to the U.S. Capitol on January 6, 2021. Rusyn was charged with the same four misdemeanors as Lee on April 7, 2021 and offered a plea to 40 U.S.C. § 5104(e)(2)(G) on July 9, 2021. Rusyn accepted the offer on September 8, 2021 and pled guilty on September 13, 2021.

February 10, 2022, ahead of the status conference, the government informed defense counsel via email that such an offer would not be available again: "So you know, now that Ms. Lee has rejected the plea offer and we are setting a trial date, our offer to one count of 5104(e)(2)(G) will not be available again in the future should she change her mind."

### III. Relevant Proceedings in Other Cases

At the time the government made its initial plea offer to Lee, the government had yet to try a single January 6 defendant, let alone try a January 6 defendant charged with violating 18 U.S.C. § 1512(c)(2). Moreover, at the time of the offer, novel pretrial motions to dismiss the 1512(c)(2) charge were pending in other cases in this Courthouse.[3] Since the time of Lee's initial offer, up through the date of the superseding indictment, the government proceeded to try <u>thirty-one</u> other January 6 defendants for violations of 18 U.S.C. § 1512(c)(2), the first in late February 2022.[4]

### IV. Preparation for Lee's Trial

Having rejected the government's plea offer, Lee filed several motions to dismiss her case. Following several delays (at defense's request) these motions were heard and denied on July 21,

---

[3] The District Court (Judge Friedrich) first denied a motion to dismiss charges under 18 U.S.C. § 1512 for unconstitutional vagueness and failure to state a claim on December 10, over a week after Lee had been offered the plea. *United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006 (D.D.C. Dec. 10, 2021). Denials of similar motions followed.

[4] These are: *United States v. Reffitt,* 21-cr-32 (DLF); *United States v. Robertson,* 21-cr-34 (CRC); *United States v. Thompson,* 21-cr-161 (RBW); *United States v. Hale-Cusanelli,* 21-cr-37 (TNM); *United States v. Seefried,* 21-cr-46 (TNM); *United States v. Williams,* 21-cr-377 (BAH); *United States v. Bledsoe,* 21-cr-204 (BAH), *United States v. Herrera,* 21-cr-619 (BAH), *United States v. Fitzsimons,* 21-cr-158 (RC), *United States v. McCaughey,* 21-cr-40 (TNM), *United States v. Jensen,* 21-cr-6 (TJK), *United States v. Strand,* 21-cr-85 (CRC), *United States v. Williams,* 21-cr-618 (ABJ); *United States v. Rhodes,* 22-cr-15 (APM), *United States v. Brock,* 21-cr-140 (JDB), *United States v. Schwartz,* 21-cr-178 (APM), *United States v. Egtvedt,* 21-cr-177 (CRC), *United States v. Weeks,* 21-cr-247 (TFH), *United States v. Grider,* 21-cr-22 (CKK), and *United States v. Sandoval,* 21-cr-195 (TFH); *United States v. Gillespie,* 22-cr-60 (BAH); *United States v. Nordean, et. al.*, 21-CR-175 (TJK); *United States v. Barnett,* 21-cr-38 (CRC); *United States v. Black,* 21-cr-127 (ABJ); *United States v. Sheppard*, 21-cr-203 (JDB); *United States v. Gossjankowski*, 21-cr-123 (PLF); *United States v. Bacon,* 21-cr-488 (CRC); *United States v. Calhoun,* 21-cr-116 (DLF); *United States v. Speed,* 22-cr-244 (TNM); *United States v. Carpenter,* 21-cr-35 (JEB); *United States v. Jenkins,* 21-cr-245 (APM).

2022. *United States v. Lee*, 21-cr-303 (ABJ), Motions Hearing, 7/21/22. On September 18, 2022, Lee moved for a bench trial in the magistrate court.

Around this same time, in September 2022, government counsel assigned to Lee's case, Michael Romano, was promoted to a supervisory role. Along with numerous others, Lee's case was handed off to another Assistant United States Attorney to prepare for trial. Tighe Beach was added to the case in October 2022 to this end. At a November 18, 2022 status conference, Magistrate Judge Zia Faruqi set the case for trial, to be held May 22, 2023.

At the time, Assistant U.S. Attorney Beach focused his attention on the trials of Donnie Wren and Thomas Smith, set for January 9, 2023 (and ultimately held in April 2023) and Luke Coffee, set for February 27, 2023. Undersigned counsel was added to Lee's case in February 2023 to pick up the mantle of trial preparation, and promptly reviewed and synthesized the significant volume of photo and video evidence in the case – including from the U.S. Capitol's Closed Circuit Television, Lee's and Rusyn's phones, Lee's social media, and other open sources – as well as Lee's numerous statements on social media. On April 5, 2023, the Grand Jury indicted Lee on the four misdemeanors originally charged via information and one count of 18 U.S.C. § 1512(c)(2).

## ARGUMENT

### I. Vindictive Prosecution

The standard for a motion to dismiss for vindictive prosecution is high, and Lee does not make out even a prima facie case. The law is settled that the government is not beholden to its initial charging decision; nor does the early plea offer providing the benefits of a swift resolution of the case set the outer bounds for the charges the government can ultimately bring. As the government prepares for trial and the evidence crystallizes, it is well within its rights to revisit its

charging decision and determine whether additional charges were warranted. Here, the additional count clearly was.

Even were Lee to establish a presumption of vindictiveness, her motion would fail. Multiple objective reasons support the government's decision to indict, including (1) the proceedings in numerous trials on the same charge, which occurred after the initial plea offer was made; and (2) the strength of the evidence of Lee's corrupt intent. Each is more than enough to make the "minimal" showing that Lee was not indicted "solely" to punish her for exercising a legal right. *Meadows*, 867 F.3d at 1312; *Goodwin*, 457 U.S. at 380 n.11.

### a. Legal Standards

"Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *Meyer*, 810 F.2d at 1245 (citing *Goodwin*, 457 U.S. at 372). The doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution . . ." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011). Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *Slatten*, 865 F.3d at 799 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). To succeed on a claim of vindictive prosecution, a defendant must show "that the increased charge was 'brought *solely* to "penalize" [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* (quoting *Goodwin*, 457 U.S. at 380 n.12) (emphasis in *Slatten*).

There are two ways a defendant may make this showing: "through objective evidence showing actual vindictiveness, or through evidence 'indicat[ing] a realistic likelihood of vindictiveness,'" which gives rise to a presumption that the government must then attempt to rebut." *Id.* (quoting *Meyer*, 810 F.2d at 1245). "The mere possibility that [a] second indictment

was vindictively motivated does not suffice." *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002). If defendant's evidence raises a presumption, the government may then overcome it "with 'objective information in the record justifying the increased sentence [or charges].'" *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001) (quoting *Goodwin*, 457 U.S. at 374). "That burden is 'admittedly minimal -- any objective evidence justifying the prosecutor's actions will suffice.'" *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

"To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make.'" *Gary*, 291 F.3d at 34 (quoting *Maddox*, 238 F.3d at 446).

The second route—identifying evidence establishing a "realistic likelihood of vindictiveness"—requires "something more" than an increase in charges that followed the exercise of his constitutional or statutory rights. *Meadows*, 867 F.3d at 1313; *see also Safavian,* 649 F.3d at 692 ("[A] prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context"). This principle applies even where the evidence supporting the new charge was in the government's possession at the time of the initial indictment. "An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution." *Goodwin*, 457 U.S. at 380. Even where the government has full knowledge of the facts, it can initially exercise its discretion to bring lesser charges." *Slatten*, 865 F.3d at 800. And, as the Supreme Court has observed, "a prosecutor may"—as part of a plea agreement—"forgo legitimate charges already brought in an effort to save the time and expense of trial." *Goodwin,* 457 U.S. at 380. The converse is likewise true: "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id*.

In the pretrial context, prosecutorial vindictiveness claims based on the addition of charges rarely succeed. "A defendant must show that the prosecutor's action was 'more likely than not' attributable to vindictiveness." *Safavian*, 649 F.3d at 692 (quoting *Gary*, 291 F.3d at 34) (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989))). This is a difficult showing to make in a pretrial posture, where "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381). Moreover, the "routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* In addition, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Meadows*, 867 F.3d at 1313 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Thus, in the pretrial context, "there must be something more" than an increase in charges following the exercise of rights "for a presumption to arise." *Id.* (citation omitted).

In *Goodwin*, the Supreme Court addressed a situation where the government initially charged a defendant with misdemeanors and then added a felony charge after the defendant requested a jury trial. *Goodwin*, 457 U.S. at 370. The Court declined to apply a presumption of vindictiveness. It explained, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further

prosecution *or he simply may come to realize that information possessed by the State has a broader significance.*" *Id.* at 381 (emphasis added).  The Court found that

> the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional or greater charges after the defendant made a pretrial demand for a jury trial. *Id.* at 384.

### b. Lee's Motion Establishes Neither Actual Vindictiveness nor a Realistic Likelihood of Vindictive Prosecution

Lee fails to point to either objective evidence of actual vindictiveness or evidence indicating a realistic likelihood of vindictiveness. She therefore cannot establish a presumption of vindictiveness, and her motion must fail.

Lee identifies no direct evidence that the government acted "solely" to punish her for exercising a legal right. *Goodwin*, 457 U.S. at 380 n.11. Her conclusory assertions, including that the government's charging decision was "designed to chill the exercise of rights of Jan. 6 litigants," are not evidence.

Lee argues that because the government's superseding indictment was not based on new evidence, it is "presumptively (and, in fact, plainly) retaliatory" (ECF 97 at 4). However, Lee fails to acknowledge that this argument was plainly rejected by the Supreme Court in *Goodwin*.

*Goodwin* at 457 U.S. at 381-82 ("The prosecutor…simply may come to realize that information possessed by the State has a broader significance… An initial decision should not freeze future conduct.").

In *Goodwin*, as here, the defendant originally was charged with misdemeanors; after he exercised his right to go to trial, he was indicted on felony charges. The observations that led the Supreme Court to reject Goodwin's vindictiveness claim are equally dispositive of Lee's. As in *Goodwin,* "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* at 382. Such was the case here. The government first charged Lee with misdemeanors and offered Lee a plea to a misdemeanor charge, which gave consideration for a prompt acceptance of responsibility. The government made this offer at a time when not a single 1512(c)(2) charge arising from the events of January 6, 2021, had proceeded to trial. In fact, at the time the plea was offered, the District Court had yet to even rule on pretrial motions regarding the charge in the January 6 context.

*Goodwin* recognized that, early in a case, before extensive trial preparation is complete, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or *further consideration of known information*, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381) (emphasis added). In fact, the government's explanation of the additional charge – though regarded by Lee as "the frankest possible admission" of retaliation (ECF 97 at 4) – closely mirrors the Court's reasoning in *Goodwin*. It was entirely appropriate for the government's assessment of the case to crystallize, or evolve, as it further considered the information it possessed, especially considering the dozens of other cases that proceeded to trial on 1512(c)(2) charges in the time since the government first charged Lee and made its initial plea offer.

Recently, Judge Moss rejected a prosecutorial vindictiveness claim based on the filing of additional charges after the defendants elected to go to trial, relying on *Goodwin. United States v. Allgood,* 610 F. Supp. 3d 239 (D.D.C. July 7, 2022). In *Allgood,* five days after the defendants exercised their speedy trial rights and the court set a trial date, the government notified defendants of its intent to bring additional charges, including mandatory minimum terms of incarceration. *Id.* at 249. Soon thereafter, the government superseded with additional charges providing for a twenty-year mandatory minimum sentence. *Id.* Defendants moved to dismiss, arguing that the government acted vindictively to punish them for asserting their speedy trial rights. *Id.* at 246. They argued that they had established a "realistic likelihood" of vindictiveness based on (1) the timing of the government's decision to supersede, (2) the fact that the government "long knew" the information justifying the additional charges, (3) the lack of a prior warning about the additional charges, and (4) the absence of a nexus to plea negotiations.[5] Judge Moss found defendants' argument "at odds" with *Goodwin,* where the same facts were present, but did not create a presumption of vindictiveness. *Id.* at 249. *See also United States v. Simmons,* No. 18-cr-344 (EGS), 2022 WL 1302888, at *18 (D.D.C. May 2, 2022) (rejecting prosecutorial vindictiveness claim where "there is 'no fact beyond the mere sequence of events to support any presumption of improper motivation.'") (citing *United States v. Mills*, 925 F.2d 455, 463 (D.C. Cir. 1991), *overruled on other grounds by United States v. Mills,* 964 F.2d 1186, 1193 (D.C. Cir. 1992)).

The facts here are even less compelling than those Judge Moss found unpersuasive in *Allgood* and which the Supreme Court held did not establish a presumption of vindictiveness in *Goodwin.* In *Goodwin,* the prosecutors added the felony charges approximately six weeks after the

---

[5] The *Allgood* defendants also made an "actual vindictiveness" argument, based on a supervisor's comments to a defense attorney. *Allgood,* 610 F. Supp. 3d at 246-47. Judge Moss rejected this claim, finding that defendants failed to show that the supervisor's comments were motivated by defendants' assertion of their speedy trial rights. *Id.* at 247-48.

defendant exercised his right to a jury trial; in *Allgood,* only five days elapsed between defendants' exercise of their rights and the government notifying them of its intent to supersede. *Goodwin,* 457 U.S. at 371, *Allgood,* 610 F. Supp. 3d at 249. Here, Lee rejected the government's plea offer on January 31, 2022; the government knew Lee was exercising her right to go to trial over 14 months before it superseded Lee's indictment on April 5, 2023, seven weeks ahead of trial. This timing overwhelmingly suggests that the additional charge was not a reaction to Lee's long-since-passed decision to go to trial. Instead, it supports the government's stated explanation for the additional charge: as it marshalled the evidence in preparation for trial, the government's understanding of the case, and view of Lee's actions on January 6, 2021, evolved.

On the other factors considered in *Allgood* and *Goodwin*, this case is nearly identical:

> In both cases, moreover, the government brought additional charges against the defendants based on facts that were known before they invoked their rights. *See id.* at 371 n.2 (listing the prosecutor's reasons for bringing increased charges). In neither case did the government warn the defendants of the possibility that they might face increased charges if they chose to go trial. And, in neither case did the government decide to bring additional charges as part of a plea negotiation; in *Goodwin*, the defendant emphasized that "the additional charge . . . was brought outside the context of plea negotiation." *Id.*

*Allgood,* 610 F. Supp. 3d 239 at 249-250. The court thus concluded, "as the Supreme Court did in *Goodwin*," that the circumstances there did not suggest a realistic likelihood of prosecutorial vindictiveness. *Id.* This Court should thus find the same.

Nor does *Meyer*, a rare case recognizing a presumption of vindictiveness pre-trial, support Lee's claims. The holding in *Meyer* is both readily distinguishable and "limited to the precise circumstances of this case." *Meyer,* 810 F.2d at 1248; *see also Meadows*, 867 F.3d at 1314 ("[T]he facts in *Meyer* were unusual."). *Meyer* arose out of the arrest of 200 defendants, each of whom had the chance to pay $50 to resolve his or her charges. *Id.* at 1243. Those who chose to go to trial were charged with an additional crime, as they learned at their arraignments (all of which took place on three days). *Id.* at 1244. Judge Moss recently had "little difficulty concluding that *Meyer*

[was] inapposite" in *Allgood,* 610 F. Supp. 3d 239 at 250, and similar reasons distinguish *Meyer* here. For example, here there is no allegation of disparate treatment (*i.e.*, unlike in *Meyer,* Lee does not and cannot allege that all non-pleading January 6th defendants are charged with additional crimes); the government has not offered to drop the felony charge; the case does not involve the "simplicity and clarity of both the facts and law underlying [the] prosecutions" present in *Meyer,* and the felony charge was not added to avoid the "annoyance and expense" of a "potentially drawn out trial." *Meyer,* 810 F.2d at 1246-47.  Finally, in *Meyer,* the government "never attempted to rebut the presumption." *Id.* at 1249. Assuming such a presumption exists here, the government does (see Section I.c., *infra*).

While Lee notes that codefendant Michael Rusyn accepted a plea similar to the one offered Lee, this does not create a likelihood of vindictiveness because, as discussed in Section I.c., *infra*, Lee's intent to obstruct Congress was far clearer than Rusyn's; Lee made numerous statements indicating her desire to obstruct Congress prior to, during, and after January 6, 2021, and took a leadership role in bringing others to the U.S. Capitol to do the same. As is typical, defendants Rusyn and Lee were both afforded the opportunity, early on, to benefit from less severe charges if they promptly accepted responsibility. Rusyn accepted this offer and resolved the case against him before the government began preparing for trial. However, after Lee rejected this offer, the government began preparing for Lee's trial, and her statements and actions were scrutinized further. In doing so (primarily in February and March of this year, for the reasons explained earlier) the government concluded that it could prove Lee's knowledge of an official proceeding, and her intent to obstruct and impede it. The government did not have comparable evidence in Rusyn's case.

Nor does Lee's indictment create an appearance of vindictiveness. As Judge McFadden explained when denying a similar motion in *United States v. Speed*, there is nothing "mysterious" or "startling" (ECF 97 at 5, 7) about the government's addition of a 1512(c)(2) charge: "Further rebutting any presumption of vindictiveness is the Government's pattern of conduct in prosecuting January 6th cases. I think it's fair to say the Government has vigorously prosecuted Capitol rioters and, as the Government notes, it has superseded with more serious charges in many cases in a similar posture. I'm looking to *United States versus Barnett*, No. 21-CR-238; *United States versus Miller*, No. 21-CR-119; *United States versus Irwin*, No. 21-CR-589, all from this district. In other words, the Government's decision to bring an obstruction count here is in keeping with its treatment of similar January 6th-related cases." *United States v. Speed*, 22-cr-244 (TNF) 3/2/2023 Tr. At 9.

Lee has not established a presumption of vindictiveness.

### c. Even Had Lee Established a Presumptiveness of Vindictive Prosecution, She Would Not Prevail

Even if Lee had met her burden to establish a presumption of vindictiveness, the government could readily overcome that presumption with "'objective information in the record justifying the increased sentence [or charges].'" *Maddox*, 238 F.3d at 446 (quoting *Goodwin*, 457 U.S. at 374). At the time of the initial plea offer, *zero* January 6 cases had gone to trial, let alone on 18 U.S.C. § 1512(c)(2). The District Court was yet to rule even on pretrial motions regarding the obstruction charge. As of April 5, 2023, the date of the superseding indictment, *more than thirty* cases were tried to verdict on 18 U.S.C. § 1512(c)(2). The verdicts and opinions issued in the many obstruction cases involving January 6 defendants have since shaped the government's understanding of the type of evidence that persuades factfinders at trial. In another example of the District Court rejecting a claim of retaliatory prosecution for the addition of a felony charge

pretrial, Judge McFadden acknowledged these developments as "justify[ing] the Government's decision": "Notably, this obstruction of an official proceeding charge is a relatively obscure charge…it is not surprising that the Government's approach to this charge has evolved over the last few months as a number of the January 6th cases have moved through the system." *United States v. Speed*, 22-cr-244 (TNF) 3/2/2023 Tr. At 8. This fact is more than enough to satisfy the "minimal" burden on the government, demonstrating that the new charge was not brought "solely" to penalize Speed. *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

The government's decision, however, need not rest on developments that post-date the original charging decision; the prosecutors also "simply may come to realize that information possessed by the State has a broader significance." *Goodwin,* 457 U.S. at 381. Here, the evidence of Lee's corrupt intent is compelling. Long before she arrived in Washington, D.C. on January 6, 2021, Lee advocated violence against Congress on social media, including through "execution by firing squad." Lee organized a bus to take herself and others in her area to Washington in order to "stop the steal." On January 6, 2021, she violently forced her way into and through the U.S. Capitol. Standing just outside the House Chamber Door, Lee stated on a live stream that she and others "broke the glass" and were "trying to get in." Upon exiting the U.S. Capitol, nearly an hour after she had forced her way inside, Lee ratified her actions and the intent behind them: "We fucking did it. Right inside. We fucking did it. Its our house. We fucking did it. Snorted some awesome fucking pepper spray… We used a fire extinguisher to break the glass. To get in. But then they drew guns… We went right in through this door and went straight in. probably in there for an hour. We broke right through the front and went right in." Moreover, Lee's other statements on social media in the months before the riot corroborate her intent and contain numerous

descriptions of both the certification process and alleged improprieties of the 2020 Presidential Election, leaving no question that she acted knowingly.

This strong evidence of Lee's corrupt intent, which further "crystallized" as the government prepared for trial, demonstrates that the new charge does not "solely" result from the defendant's exercise of a protected legal right but reflects "the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 U.S. at 380 n.11; s*ee, e.g.*, *Meadows*, 867 F.3d at 1315 (observing that "the government's evidence regarding the severity of Meadows' fraudulent conduct—which continued for approximately a year, involved two separate false filing schemes, and resulted in approximately 49 false claims—was sufficient to satisfy this court's admittedly minimal requirement of any objective evidence") (internal quotation marks and citations omitted); *Gary*, 291 F.3d at 34 (government's effort to prevent defendant from "escape[ing] punishment for her criminal conduct" not vindictive).

## II.     Failure to State a Claim

The Court has already ruled on a motion to dismiss for failure to state a claim in this case. *See United States v. Lee*, 21-cr-303 (ABJ), Motions Hearing, 7/21/22 Tr. at 9-10. The circumstances were similar. Defense counsel essentially made a sufficiency argument – that the evidence could not support a conviction on the misdemeanor charges originally brought. The Court rightly noted such arguments were premature: "[D]efendant's conclusory assertion that the information was based on incompetent and insufficient evidence, which, she says in her motion to dismiss at page 3, is not a basis for dismissal of the charge. If the government fails to introduce sufficient evidence to substantiate those charges at trial, the defendant will be able to raise the appropriate motion at that time." *Lee*, 7/21/22 Tr. at 10.

The Court clarified the proper standard with which a motion to dismiss an information must be evaluated:

> The Supreme Court said, in *Hamling versus United States*, 418 U.S. 87, at page 117, in 1974, "The information must, first, contain the elements of the offense charged and fairly inform a defendant of the charge against which she must defend and, second, enable her to plead an acquittal or conviction and bar future prosecutions for the same offense." The district court, in *United States versus Sanford Limited*, 859 F.Supp.2d 102, at page 107, said, in 2012, "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to conclude that the defendant committed the criminal offense as charged." *Id.* at 9.

The Court then denied Lee's motion: "These allegations comport with the legal requirement that they establish the charges against the defendant and state the factual basis for them." *Id.* at 10.

The same situation is presented here. Lee's claim that the "Statement of Offense regarding Deborah Lee does not support charges for obstructing an official proceeding" is inapposite. The Statement of Offense (expressly) reflects only facts that the government *could prove* at trial. This is a sufficiency argument, and it is premature.[6]

Evaluating the only document pertinent to the immediate motion – the indictment – the Government makes allegations that, "if proven, would be sufficient to permit a jury to conclude that the defendant committed the criminal offense as charged." *Sanford Limited*, 859 F.Supp.2d at 107. With respect to the obstruction charge, the superseding indictment (ECF 93) specifies the date and location of Lee's actions, and clearly alleges that Lee engaged in the requisite conduct with the requisite intent:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **Deborah Lynn Lee**, also known as "Debbie Lee," attempted to, and did, corruptly obstruct,

---

[6] Moreover, Lee's argument rests on a set of facts that support a completely different charge. The Statement of Offense merely formed a part of the government's plea offer – which Lee rejected – to one count of 40 U.S.C. 5104(e)(2)(G), it did not purport to reflect the full set of facts in this case. As laid out in Part I, *supra*, the government does in fact possess evidence sufficient to support a charge under 18 U.S.C. § 1512(c)(2).

influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

This alone is sufficient to state a claim. *See also United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) ("When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations."); *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) ("At the indictment stage, the government need not 'show,' but merely must allege, the required elements"; "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations."); *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) ("We have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Alexander Diamond*
Assistant United States Attorney
District of Columbia
601 D St. NW, Room 6.3104
Washington, DC 20530