**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-00303-2** |
| | : | |
| **DEBORAH LYNN LEE,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MOTION IN LIMINE REGARDING**
**AUTHENTICATION OF VIDEO EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits the following motion *in limine* regarding the

authentication of video evidence at trial.

**BACKGROUND**

The riot at, and attack on, the United States Capitol Building was an event of unparalleled

size and scope.  Much of the event was recorded on video: on surveillance footage captured by

the U.S. Capitol Police ("USCP") cameras; on Metropolitan Police Department ("MPD") body-

worn cameras; and on cameras and phones carried by journalists, members of the mob, and other

persons present in the U.S. Capitol Building and grounds on January 6, 2021. The government's

case at trial will rely heavily on such evidence to explain the defendant's specific conduct, to

contextualize it through other contemporaneous events, and to give the jury a sense of the riot as

a whole. This motion outlines the types of exhibits the government plans to use and seeks a

pretrial ruling on their authenticity.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or

identifying an item of evidence, the proponent must produce evidence sufficient to support a

finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive

list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be.
> …
> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> …
> (9) *Evidence About a Process or System*. Evidence describing a process or system and showing that it produces an accurate result.

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.,* 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, … and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely … the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell,* 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United*

*States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349; *see also, e.g., Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any reasonable doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by the evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity

of the video evidence described in this motion. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable juror could reach the same conclusion regarding authenticity. *See, e.g., United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

## ANALYSIS

The government's evidence will show that all the videos described herein fairly and accurately depict events at the Capitol which are relevant to an issue of consequence in defendant's trial. While admission of USCP and MPD video footage should be non-controversial, the following discussion will address the evidentiary basis for authentication of all the videos the government intends to offer at trial, including those. The bulk of the discussion focuses on authentication of videos from other sources, the distinctive events and characteristics visible in those videos, and the corroboration of the authenticity of those videos found from other pieces of evidence.

4

### 1.     U.S. Capitol Police Video Footage

Admission of footage from USCP's own systems is straightforward. The government will present a USCP witness to testify to their video surveillance system. This witness will be able to explain how the system is used, that it reliably records and depicts the areas where USCP has installed cameras, and the internal characteristics of videos—such as date and time stamps—which allow USCP to identify and retrieve particular segments of video. A USCP witness who was present during the attack on the Capitol will be able to explain that the videos offered by the government in this case accurately show the events that took place at the United States Capitol Building and grounds on January 6, 2021.

That testimony will satisfy Federal Rule of Evidence 901(b)(1), "Testimony of a Witness with Knowledge" to show that "an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). *See American Wrecking Corp. v. Secretary of Labor*, 351 F.3d 1254, 1262 (D.C. Cir. 2003) (photograph of accident site was properly authenticated by credible testimony of site supervisor).

Although Rule 901(b)(1) alone would be sufficient to support admission of the USCP testimony, that testimony will also satisfy Rule 901(b)(4), which allows authentication by way of "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). It also will accord with the requirements of Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9).

### 2.     Body-Worn Camera Footage from the Metropolitan Police Department

The admissibility of footage from body-worn cameras, worn by MPD officers on January 6, 2021, is also clear. Under Rule 901(b)(1), either the officer who wore the camera, or any other witness to the events depicted in the video, can authenticate the video based on their personal knowledge that the video fairly and accurately depicts the events that occurred. *See, e.g., United*

*States v. Pattterson*, 277 F.3d 709, 713 (4th Cir. 2002) ("The necessary foundation for the introduction of a photograph is most commonly established through eyewitness testimony that the picture accurately depicts the scene in question[.]"); *United States v. Rembert*, 863 F.2d 1029, 1026 (D.C. Cir. 1988) (noting one method of authentication occurs where "a sponsoring witness (whether or not he is the photographer) who has personal knowledge of the scene depicted testifies that the photograph fairly and accurately portrays that scene").

Due to the nature of the events—crowds of rioters pushing against and past police officers—many body-worn cameras recorded slightly different angles of the same events. Any single officer who was present there will be able to testify that all the videos fairly and accurately depict what occurred. *See* Fed. R. 901(b)(1). Many interactions can also be seen from elevated USCP surveillance cameras, and a comparison of this bird's-eye view with MPD body-worn cameras supports their authenticity. *See* Fed. R. Evid. 901(b)(4) (authentication by comparison with another authenticated specimen).

### 3.      Cameras Carried by Persons Present in the Crowd

The government also intends to offer numerous video clips from sources other than USCP and MPD. Some of these were taken from reporters who were present at the Capitol that day. Others were taken by the defendant's fellow rioters or other members of the crowd. Many were obtained through open-source means and are publicly available.

For these videos, the government would establish authenticity by asking the jury to compare them with other, authenticated exhibits—namely USCP and MPD footage. Fed. R. Evid. 901(3).  Police footage confirms these other videos are what they purport to be: recordings of the same events, captured from a different perspective, and in some cases depicting details that were not fully captured by the USCP or MPD systems. The distinctive characteristics of the defendant's attire, combined with the distinctive characteristics of other rioters captured on

USCP and MPD footage, will further help support authentication of these exhibits. Fed. R. Evid. 901(4).

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule *in limine* that the government's video evidence satisfies the authenticity requirement of Fed. R. Evid. 901.

Dated:    March 27, 2024

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Tighe Beach*
ALEXANDER DIAMOND
NY Bar No. 5684634
TIGHE BEACH
CO Bar No. 55328
Assistant United States Attorneys
District of Columbia
601 D St. NW
Washington, DC 20530
tighe.beach@usdoj.gov