UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> DEBORAH LYNN LEE, <br><br> Defendant. | No. 21-cr-303-ZMF |

**MEMORANDUM ORDER**

Ms. Lee is currently on release post-trial and pre-sentencing. *See* Def.'s Mot. Modify Conditions of Release ("Def.'s Mot.") 2, ECF No. 146. She has requested to travel to Washington, D.C. from January 19, 2025 to January 20, 2025 to attend the inauguration of President-Elect Donald Trump. *See id.* This Court GRANTS Ms. Lee's request for permission to travel.

I.   **BACKGROUND**

On August 5, 2021, the government filed a complaint charging Ms. Lee with four misdemeanor violations in connection with the events of January 6, 2021. *See* Compl. 1, ECF No. 1. On August 16, 2021, the presiding Magistrate Judge imposed several conditions of release, including a restriction that Ms. Lee refrain from travelling to Washington, D.C. except for court-related reasons. *See* Order Setting Conditions of Release 2, ECF No. 7. On October 5, 2024, Ms. Lee asked to remove the random drug testing condition of release. *See* Def.'s Mot. Modify Conditions of Release 2, ECF No. 139. On October 10, 2024, the Court granted that request, in part, because Ms. Lee had successfully complied with her conditions of release. *See* Min. Entry (Oct. 10, 2024).

On April 5, 2023, the Grand Jury returned an indictment charging Ms. Lee with the same four misdemeanor charges and one felony charge. *See* Superseding Indict. 1, ECF No. 93. On

1

August 2, 2024, the government moved to dismiss the felony charge in light of *Fischer v. United States*, 603 U.S. 480 (2024). *See* Mot. Dismiss 1, ECF No. 131.

On October 11, 2024, the Court concluded a bench trial. The Court found Ms. Lee guilty on all four misdemeanor counts. *See* Min. Entry (Oct. 11, 2024). The government did not seek to modify Ms. Lee's conditions of release post-conviction. In turn, the Court maintained the conditions of release pending sentencing. *See id.*

Ms. Lee is scheduled to appear in Washington, D.C. for sentencing on January 27, 2025.

Ms. Lee now moves the Court to modify her conditions of release, to travel to Washington, D.C. for two days to attend the presidential inauguration *See* Def.'s Mot. at 2.

## II.     STANDARD

The Bail Reform Act authorizes the release of a defendant pending sentencing if a court finds "that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . . [If] the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with" Section 3142(c). 18 U.S.C. § 3143(a). Per Section 3142(c)(3), "[t]he judicial officer may at any time amend the order to impose . . . different conditions of release." "[A] defendant must be . . . subject to the least restrictive . . . condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See, e.g.*, *United States v. Irizarry*, No. 22-cr-3028, 2022 WL 2284298, at *1 (D.C. Cir. June 24, 2022) (quoting 18 U.S.C. § 3142(c)(1)(B)). Consequently, the two necessary inquiries are whether the defendant poses a danger to the community or a flight risk. *See United States v. Klein*, 533 F. Supp. 3d 1, 8 (D.D.C. 2021).

When considering these inquiries, courts "evaluate[] the record considering the same four dangerousness and flight-risk factors laid out in § 3142(g)":

> (1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*United States v. Chansley*, No. 21-cr-003, 2021 WL 4133655, at *2 (D.D.C. Sept. 10, 2021); *see also* 18 U.S.C. § 3142(g).

At the same time, "[t]he United States Constitution constrains a . . . court's discretion." *United States v. Trotter*, 321 F. Supp. 3d 337, 358 (E.D.N.Y. 2018) (terminating supervised release early despite Defendant's violation of condition to not use marijuana). "[W]hen a fundamental liberty interest is implicated by a sentencing condition, we must first consider the sentencing goal to which the condition relates . . . [and w]e must then consider whether it represents a greater deprivation of liberty than is necessary to achieve that goal." *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005). Although the Court is not analyzing a condition post-sentencing, it is addressing an identical release condition. See *Trotter*, 321 F. Supp. 3d at 353 (citing travel restriction as a "standard condition" of supervised release). The goals of the travel restriction condition here—to protect the community and prevent Ms. Lee's flight—must be balanced against Ms. Lee's constitutional right to freely associate. *See e.g.*, NAACP v. Alabama, 357 U.S. 449 (1958).

### III.     ANALYSIS

#### A.     Dangerousness

The government's opposition is rooted in a blithe assertion of Ms. Lee's dangerousness. They describe the events of January 6, 2021 as "a full-scale riot . . . which contributed to the disruption of the peaceful transition of power." United States' Opp'n Def.'s Mot. Modify

3

Conditions Release ("Gov't's Opp'n") 4, ECF No. 147. This is an accurate, if not benign, characterization of what happened that day. However, the general tragedy of that day is insufficient alone to predict violence by anyone, let alone by Ms. Lee, four years later. In fact, the motivation—and the motivators—for the violence that day were mollified the moment the President-Elect won. Miraculously, elections that yield a winning result are fair and valid, but a losing result are stolen and invalid. Regardless, without the bogeyman of a stolen election, the risk of violence seems nonexistent. Ms. Lee is coming to celebrate, not demonstrate.

Recent events confirm this. On January 6, 2025, the Vice President honorably certified the vote of the electoral college. No violence occurred that day. With no credible threat, there is no credible danger to the community.

The government's only argument is that granting this motion would "put Lee in a politically charged environment similar to the one that led to the January 6, 2021[] attack." *Id.* at 5. This conclusion is based not on a sworn affidavit from an FBI or Secret Service agent, but on Rolling Stone reporting. *Id.* at 4 (citing Tim Dickinson, *Activists Gear Up to Counter Trump's Inauguration*, Rolling Stone (Jan. 10, 2025), https://www.rollingstone.com/politics/politics-features/trump-inauguration-peoples-march-protest-1235230466/). Moreover, the "environment" today—where the sitting administration respects the outcome of an election—could not be more different than the "politically charged environment [of] January 6, 2021."

The government also argues that Ms. Lee's *misdemeanors* convictions are "serious offenses." *See id.* at 1. However, they cite no law as to whether seriousness is a relevant consideration for dangerousness. *Cf. United States. v. Purse*, No. 21-cr-0512, 2022 WL 17264634, at *2 (D.D.C. Nov. 29, 2022) (showing seriousness of the offenses is not a relevant consideration for flight risk). Moreover, Ms. Lee was neither charged with, nor found guilty of, committing any

4

violent crimes. All crimes are serious, but hers are at the lowest end of that spectrum. This warrants against a finding of dangerousness. *See* Min. Order, *United States v. Peterson*, 24-cr-376 (D.D.C. Dec. 19, 2024) (granting permission to travel to Washington, D.C. to a nonviolent defendant). At bottom, it appears the government seeks to punish Ms. Lee *before sentencing* for all that transpired on January 6. This is a repeated tune that the Court will not abide. *See Irizarry*, 2022 WL 2284298, at *1. It is "error" to make pre-sentence release rulings based "on global judgments about all defendants charged with offenses related to January 6, rather than on an individualized assessment of safety concerns or flight risks presented by [a defendant herself]." *Id.*

Finally, the government argues that allowing Ms. Lee to "travel to Washington, D.C. places Capitol police officers in danger." Gov't's Opp'n at 5. If the government is arguing that her mere presence around such officers will send her to violence, that is demonstrably false.[1] Ms. Lee came to Washington, D.C. for trial. There, she was face-to-face with the Capitol Police officers without incident. Moreover, there is no allegation that she engaged in violence towards law enforcement on January 6, 2021. Alternatively, the government may be arguing that if a riot breaks out at the inauguration, Ms. Lee will again participate in it. But the Court is unconvinced that the inauguration is at risk of riot. *See supra* p. 4. Nor is there any indication Ms. Lee organized or incited the prior riot. And, if this was the government's concern, they could have requested that Ms. Lee stay away from police lines or restrict her observations to certain locations far enough away from protected areas. But they did not.

Ms. Lee's motion is quite clear. She wishes to travel to Washington D.C. for two days "to be in attendance of President-Elect Donald Trump's Inauguration." Def.'s Mot. at 2. The Court

---

[1] The government's argument implies that criminals who assault a law enforcement officer have lessened rights to be around law enforcement thereafter. Unfortunately, law enforcement must protect and serve every community member, even those who may have previously attacked them.

has no reason to believe she wishes to travel for more insidious reasons. Ms. Lee "has no prior criminal [convictions] and has complied with the conditions of [her] release thus far." *United States v. Viau*, No.19-cr-09, 2019 WL 3412920, at *3 (D.D.C. July 29, 2019); *see also* Draft Presentence Invest. Rep., 5, 12, ECF No. 145. During court appearances, she has been respectful of the Court and its staff. And a sword of Damocles hangs above her: an upcoming sentencing hearing. To engage in any misconduct before then would lead to severe consequence for her. Thus, the government has failed to establish danger from allowing Ms. Lee to step foot in the city for two days.

      B.      <u>Flight Risk</u>

The government does not argue that Ms. Lee poses a flight risk. *See generally* Gov't's Opp'n. Thus, the Court need not consider this factor. *See Irizarry*, 2022 WL 2284298, at *2 ("clearly erroneous" for a court to deny a defendant's request to travel based on flight risk when the government "did not advance that argument").

**IV.    CONCLUSION**

While the Court is tasked with predicting the future, this is not Minority Report. There has to be credible evidence of future danger to justify related release conditions. *C.f. United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021). Without such evidence here, the "the least restrictive" condition which will reasonably ensure safety of the community is to allow Ms. Lee to travel to the inauguration. *Id.* § 3142(c)(1)(B).

Date: January 15, 2025

                                                                                          _____
                                                                                          ZIA M. FARUQUI
                                                                                          UNITED STATES MAGISTRATE JUDGE